**SAPIR & FRUMKIN LLP**
ATTORNEYS AT LAW
399 KNOLLWOOD ROAD, SUITE 310
WHITE PLAINS, NEW YORK 10603

WRITER'S E-MAIL: WFrumkin@sapirfrumkin.com

DONALD L. SAPIR
WILLIAM D. FRUMKIN*

DANIEL T. DRIESEN^
KATHRYN E. WHITE**
EMILY A. ROSCIA
CRISTINA A. FAHRBACH**
WILLIAM E. CUSACK III

*ADMITTED IN NY & CT
**ADMITTED IN NY & NJ
^ADMITTED IN NY & MA

TEL: (914) 328-0366
FAX: (914) 682-0128

PARALEGAL
RACHEL L. HORTON

January 26, 2007

<u>*Via Facsimile and Regular Mail*</u>
*Facsimile No. (845) 454-4366*

Lee David Klein, Esq.
Wolfson, Greller, Egitto & Klein LLP
11 Market Street
Poughkeepsie, New York 12601-3215

      Re:   *Fred Smit, et al. v. Rodar Enterprises, Inc. and Robert Sherwood, Individually*
            *Our File No. 04-7498*

Dear Mr. Klein:

      This firm represents Fred Smit, *et al.* ("Local 445 Benefit Funds") in the above-referenced matter. I am writing in response to your December 14, 2006 letter concerning the Funds' response to your letter of November 29, 2006 ("November Letter"), request for review of withdrawal liability, and request for arbitration.

      Regarding the subject matter of the November Letter, you argue that a withdrawal had not taken place because, in Teamsters Local 445's ("Local 445") letter of June 30, 2005 ("June Letter"), Local 445 indicates that it would be willing to negotiate a new collective bargaining agreement ("CBA") with Rodar Enterprises, Inc. ("Rodar"). The June 30, 2005 letter makes clear that Local 445's reluctance to negotiate a new collective bargaining agreement with Rodar is based upon Rodar's repeated failure to timely pay employee fringe benefit contributions and late charges on the delinquent contributions owed to the Fund for the period from March 1997 through December 2003 in the total amount of $170,485.99. If this situation did not repeatedly occur Local 445 would be inclined to enter into a new CBA. Notwithstanding, Rodar, through its owner Robert Sherwood ("Sherwood"), has stated in clear and convincing terms that it has no interest in pursuing a new CBA

Lee David Klein, Esq.                                    -2-                                    January 26, 2007

with Local 445. Just recently, Mr. Sherwood told Cindy Garlinghouse, Local 445 Business Agent, that he had no interest in *any* further dealings with Local 445. An additional indicator of Local 445's and Rodar's apathies toward resolving its differences is the more than eighteen (18) month long impasse between Local 445 and Rodar in mediating any disagreements between them.

Local 445's and Rodar's indisputable disinterests with each other prove that there is no current labor dispute because there is no controversy concerning the terms, tenure, or conditions of employment between Local 445 and Rodar. *T.I.M.E.-DC, Inc. v. I.A.M. Nat'l Pension Fund*, 597 F. Supp. 256, 258 (D.D.C. 1984) *citing the Norris-LaGuardia Act*, 29 U.S.C. § 113(c); *citing the National Labor Relations Act*, 29 U.S.C. § 152(9); *citing the Taft-Hartley Act*, 29 U.S.C. §§ 142(2) and (3); *N.Y. State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 22 (2d Cir. 1988) *citing I.A.M. National Pension Fund, Benefit Plan C v. Schulze Tool & Die Co.*, 564 F. Supp. 1285, 1295 (N.D. Cal. 1983). Any dispute between Local 445 and Rodar is permanent. *Sheet Metal Workers' Pension Fund, Local Union No. 85 v. Advanced Metal & Welding Corp.*, 654 F. Supp. 219 (D. Ga. 1986) *citing Robbins v. McNicholas Transportation Co.*, 6 E.B.C. 1777, 1779 (N.D. Ill. 1985); *McNicholas Transp.*, 848 F.2d at 22 *citing Schulze Tool & Die*, 564 F. Supp. at 1295. As such, Rodar has permanently ceased its obligation to contribute to the Local 445 Benefit Funds. *Advanced Metal & Welding*, 654 F. Supp. 219 *citing Robbins*, 6 E.B.C. at 1779; *McNicholas Transp.*, 848 F.2d at 22 *citing Schulze Tool & Die*, 564 F. Supp. at 1295. This entitles the Local 445 Benefit Funds to assess withdrawal liability against Rodar. *McNicholas Transp.*, 848 F.2d at 22 *citing Schulze Tool & Die*, 564 F. Supp. At 1295; *See Marvin Hayes Lines, Inc. and Cent. States SE & SW Areas Pension Fund*, 8 E.B.C. 1834 (Weckstein, Arb. 1987); *See In re Centra Inc. and Chicago Truck Drivers Pension Fund*, 15 E.B.C. 2713 (Jaffee, Arb. 1992); *See Garland Coal Co. and UMWA 1950 and 1974 Pension Trusts*, 7 E.B.C. 1771 (Dreyer, Arb. 1986).

Regarding Rodar's request for review of the issue of withdrawal liability, Rodar requested a review "of the issue of withdrawal liability." Rodar cannot simply ask for a general review of the withdrawal liability. Under ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A), an employer who receives a notice of withdrawal liability has ninety (90) days from the date of receipt within which to ask the plan sponsor to review *specific matters* concerning the determination of liability and the payment schedule. 29 U.S.C. § 1399(b)(2)(A); *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Westchester Lace & Textiles, Inc.*, 2006 U.S. Dist. LEXIS 49845 (S.D.N.Y. 2006). On January 19, 2006, William Cusack, Esq., of our firm, spoke with you regarding the ambiguity and generality of Rodar's request. On that same day, you responded by facsimile that Rodar "disputes [the Local 445 Benefit Funds'] calculations, based primarily upon the fact that [the Local 445 Benefit Funds'] calculations are based upon inaccurate payroll information." Inaccurate payroll information may and does entail numerous meanings. You do not identify *with specificity* "any inaccuracy in the determination of the amount of the unfunded vested benefits." 29 U.S.C. § 1399(b)(2)(A)(ii); *Westchester Lace & Textiles*, 2006 U.S. Dist. LEXIS 49845. Please cite the *specific matter* regarding the alleged inaccurate payroll information for which you request review.

Lee David Klein, Esq.                       -3-                       January 26, 2007

       Regarding your proposal that the Local 445 Benefit Funds agrees to the use of Edmund V. Caplicki, Jr. as an arbitrator in the above referenced matter, you cannot simply suggest an arbitrator. Any arbitration concerning the Multiemployer Pension Plan Amendments Act ("MPPAA") must be conducted in accordance with the Pension Benefit Guaranty Corporation ("PBGC") rules. ERISA § 4221(a)(2), 29 U.S.C. § 1401(a)(2). The PBGC allows the use of the American Arbitration Association ("AAA") as an alternative procedure to the PBGC and most MPPAA arbitrations done to date have been conducted in accordance with the AAA rules. 50 Fed.Reg. 34,679 (Sept. 19, 1985); 51 Fed.Reg. 22,585 (June 20, 1986). As such, any arbitration in the above referenced matter must proceed through the AAA. If your client wishes to pursue arbitration before AAA I suggest you consult its MPPAA rules and file accordingly.

       Previously, we notified you that the statutory scheme underlying the MPPAA obligates Rodar to "pay now and dispute later" any challenge it may claim against the withdrawal liability assessed by Local 445 Benefit Funds. *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 197, 118 S. Ct. 542, 547, 139 L. Ed. 2d 553, 562 (1997); *Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, 2004 U.S. Dist. LEXIS 418, 9 (S.D.N.Y. 2004). We have not received from Rodar either payment in full of $438,669.85 or withdrawal liability installment payments owed for December 2006 or January 2007 in the amounts of $9,924.60 each. As you are aware, Rodar's payments were due on the fifteenth of December 2006 and fifteenth of January 2007.

       Rodar's failure to make the withdrawal liability payments, either in full or by installment within sixty (60) days from receipt of this letter (and to stay current), will be considered a statutory default under Section 4219(c)(5) of MPPAA, thus entitling Local 445 Benefit Funds to demand from Rodar by filing within United States District Court "immediate payment of the outstanding amount of the withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which is untimely paid." Please make sure that your client makes the requisite installment payments while the matter is arbitrated as it will be useful to avoid litigation in federal court.

                                            Very truly yours,

                                            William D. Frumkin

WDF:WFC

cc:     Douglas L. McCauley, Fund Chairman (Via First Class Mail)
        Sharon Molinelli, Fund Administrator (Via First Class Mail)
        David Kramer, Esq. (By Hand)